UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALESA GLENDA FOSTER, as
Personal Representative of the Estate of
Raymond Wade Foster,

      Plaintiff,

v.                                     Case No: 8:25-cv-438-CEH-LSG

WELLPATH, LLC, DAWN MARIE
HILLMAN and CHRIS NOCCO, in his
official capacity as Sheriff of Pasco
County, Florida,

      Defendants.
_____/

## ORDER

This matter comes before the Court on Defendant Sheriff Chris Nocco's Motion

to Dismiss Plaintiff's First Amended Complaint (Doc. 25) and Defendants Wellpath,

LLC and Dawn Marie Hillman, RN's Motion to Dismiss Plaintiff's First Amended

Complaint (Doc. 26). Defendants seek dismissal of the Amended Complaint for failure

to state a claim against them under 42 U.S.C. § 1983. Plaintiff, Alesa Glenda Foster,[1]

as Personal Representative of the Estate of Raymond Wade Foster, filed responses in

opposition (Docs. 42, 43). The Court having considered the motions and being fully

advised in the premises will grant Sheriff Nocco's motion to dismiss, grant-in-part and

---

[1] Alesa Glenda Foster is the daughter of Raymond Foster, deceased, and the personal
representative of his Estate. *See* Doc. 42 at 1.

deny-in-part Wellpath and Hillman's motion to dismiss, and grant Plaintiff the opportunity to amend her complaint.

## I.   BACKGROUND[2]

This action arises out of the tragic circumstances in which Raymond Wade Foster ("Foster"), while incarcerated at the Pasco County Jail, took his own life. Doc. 6 ¶ 2. Foster was detained at the Pasco County Jail from April 24 through April 27, 2021. *Id.* ¶ 27. Upon intake, Foster was 42 years old and had a history of substance abuse with a long-term history of withdrawal and long-standing mental health issues. *Id.* ¶ 28. Foster had withdrawal symptoms while in custody during prior incarcerations, of which medical staff was or should have been aware. *Id.* He also had a significant mental health history of which the jail staff was or should have been aware. *Id.* ¶ 29.

Defendant Wellpath, LLC, ("Wellpath") contracted with the Pasco County Sheriff's Office ("PCSO") to provide medical and mental health care, screening, assessment, treatment, intervention, referral and attention to detainees at the Pasco County Jail. *Id.* ¶ 19. A copy of the Health Services Agreement is attached to the Amended Complaint. Doc. 6-1. At all relevant times, Defendant Dawn Marie Hillman, RN, ("Hillman"), a registered nurse employed by Wellpath, was acting within the scope of her employment with Wellpath. Doc. 6 ¶¶ 20, 25. Hillman is alleged to be responsible for the maintenance and/or control of the medical facility at

---

[2] The following statement of facts is derived from the First Amended Complaint (Doc. 6), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

the Pasco County Jail, including on April 24 through April 27, 2021, when Foster was detained. *Id.* ¶ 21. She is also alleged to have had a non-delegable duty to provide adequate, necessary, and reasonable medical and mental health care, screening, assessment, treatment, intervention, referral, and attention to those detained at the Pasco County Jail and to promulgate policies to ensure that detainees at the Pasco County Jail were provided with adequate, necessary, and reasonable medical and mental health care and screening. *Id.* ¶¶ 22, 23. Hillman was responsible for conducting the intake assessment and screening of Foster. *Id.* ¶ 20.

In preparing Foster's intake form, Hillman noted Foster's long-standing history of substance abuse, which put him at risk for substance abuse withdrawal. *Id.* ¶ 30. Hillman indicated Foster had no mental health issues despite significant mental health issues documented in Foster's medical record. *Id.* No referral was made for a mental health assessment prior to making housing recommendations because Foster's mental health history was documented as negative. *Id.* Hillman never notified the medical director as to Foster's current condition or history, nor was a customized treatment plan created for Foster. *Id.* ¶ 31. Hillman did not refer Foster for a face-to-face mental health evaluation as required, prior to sending him to be housed in the general population. *Id.*

Foster was ultimately placed into general population where his mental health condition and withdrawal could not be monitored, rather than placing him in the infirmary or a mental health unit where he could be appropriately supervised. *Id.* ¶ 32. On April 27, 2021, while housed in general population without medications for his

3

mental health or withdrawal conditions, Foster's mental status decompensated to the point where he was screaming for help for hours, but no one responded. *Id.* ¶ 35. At approximately 12:47 pm on April 27, Foster was found in his cell with his jumpsuit tied around his neck and to the cell bars. *Id.* ¶ 36. Medical staff performed CPR and Foster was transported to Oak Hill Hospital where he died on April 30, 2021, from hanging himself. *Id.* ¶ 37. According to Plaintiff, Wellpath's policies and procedures required an inmate such as Foster to have a full mental health evaluation prior to housing placement, but no such evaluation was ever done. *Id.* ¶¶ 38, 40.

In a four-count Amended Complaint dated April 25, 2025,[3] Plaintiff, Alesa Glenda Foster ("Plaintiff"), as Personal Representative of the Estate of Raymond Wade Foster, sues Wellpath, Hillman, and Sheriff Nocco (collectively "Defendants") for civil rights violations under 42 U.S.C. § 1983, alleging Defendants were deliberately indifferent to Foster's serious medical needs resulting in his death. Doc. 6. Counts I, II, and III are brought against Hillman and Wellpath. Count IV is brought against Sheriff Nocco.

### A.   Wellpath and Hillman's Motion to Dismiss (Doc. 26)

Wellpath and Hillman move to dismiss the claims against them in Counts I, II, and III of the Amended Complaint. Doc. 26. First, Wellpath contends that it is a Chapter 11 debtor and Plaintiff's pre-petition claims have been discharged by the bankruptcy. Second, Wellpath argues Plaintiff fails to state a § 1983 claim against it.

---

[3] Plaintiff first filed this action on February 21, 2025 (Doc. 1), suing only Wellpath and Hillman. The Amended Complaint added Sheriff Nocco as a defendant. *See* Doc. 6.

Third, Wellpath submits there has been no constitutional violation by Hillman or any other Wellpath employee to support a § 1983 claim against Wellpath. As for Hillman, she argues Plaintiff fails to state a claim against her for deliberate indifference. Next, she asserts any suit against her is barred because she is entitled to qualified immunity. Finally, Hillman submits that Plaintiff has failed to meet the conditions precedent for maintaining a claim against a non-debtor employee, namely Plaintiff has failed to opt out of the Third-Party Releases under the bankruptcy plan.

### B.    Sheriff Nocco's Motion to Dismiss (Doc. 25)

Sheriff Nocco moves to dismiss the sole claim against him in Count IV of the Amended Complaint. Doc. 25. In support, he argues that Plaintiff's Amended Complaint fails to allege sufficient facts to establish deliberate indifference on the part of Nurse Hillman, for which Plaintiff claims PCSO is liable by virtue of the contractual agreement between PCSO and Wellpath, Hillman's employer. Next, Sheriff Nocco argues that Plaintiff fails to allege the existence of an unconstitutional policy on the part of the PCSO that was the moving force behind the alleged unconstitutional violation to give rise to *Monell*[4] liability. Relatedly, Sheriff Nocco argues that Plaintiff fails to allege ultimate facts of a de facto custom or practice.

### C.    Plaintiff's Responses in Opposition (Docs. 42, 43)

In response to Wellpath and Hillman's motion, Plaintiff argues that neither she nor her counsel received actual notice of Wellpath's bankruptcy, and no evidence of

---

[4] *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

notice is attached to Defendants' motion. She urges that, at a minimum, dismissal would be premature. As for the "Opt-Out" form, she attaches as Exhibit 1 to her response a signed form in which she checked the box to "opt out of the third-party release." Doc. 43-1. The form is undated, but her response indicates that an automatic email response was received July 30, 2025, confirming successful transmission of her form by, at least, that date. Doc. 43 at 15 n.1.

Regarding Wellpath's liability, Plaintiff contends that although Wellpath is a private entity, it is considered a municipality for purposes of Section 1983 liability because the Sheriff contracted with Wellpath to provide medical care within the Pasco County jail system. Plaintiff argues that the Amended Complaint adequately alleges "deliberate indifference" in the delay in treatment to Foster. Further, Plaintiff submits she has adequately alleged the existence of a policy or custom that caused the deprivation of constitutional rights, specifically the failure to provide prompt and competent access to medical care, evaluation, and assessment. To the extent her *Monell* allegations fall short, Plaintiff requests the opportunity to amend to include factual details regarding Wellpath's systemic history of deliberate indifference.

As for her claims against Hillman, Plaintiff argues she has alleged a claim for deliberate indifference to Foster's serious medical needs. In response to Hillman's claim of qualified immunity, Plaintiff argues that she has alleged the violation of a clearly established right. Alternatively, she argues that employees of a private prison management company are not entitled to qualified immunity.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient.  *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face."  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).   The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id.*

## III.    DISCUSSION

Plaintiff sues Defendants under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation modified).

Plaintiff alleges that Defendants' conduct deprived Foster of his Fourteenth Amendment right to medical and mental health care for his serious medical needs, resulting in his death while detained in the Pasco County Jail. "The Due Process Clause of the Fourteenth Amendment guarantees pretrial detainees the right to basic necessities that the Eighth Amendment guarantees convicted persons." *Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008) (citing *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (quoting *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994))). Thus, pretrial detainees, like Foster, "have a Fourteenth Amendment due process right to receive medical treatment for illness and injuries, which encompasses a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide." *Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015) (citing *Cook*, 402 F.3d at 1115). "Because jail suicides are analogous to the failure to provide medical care, deliberate indifference has become the barometer by which suicide cases involving convicted prisoners as well as pretrial detainees are tested." *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990) (citing *Anderson v. City of Atlanta*, 778 F.2d 678, 686–87 (11th Cir. 1985) (pretrial detainee's constitutional rights are denied by deliberate indifference to his serious medical needs just as deliberate indifference denies the rights of a convicted prisoner)).

A.    **Section 1983 Claims Against Defendants**

1.    **Defendant Hillman**

8

Plaintiff sues Wellpath's employee Nurse Hillman contending she was, individually, deliberately indifferent to Foster's medical needs. In an *en banc* opinion, the Eleventh Circuit recently answered the question of the applicable legal standard to be applied for a deliberate indifference claim such as the Plaintiff's individual claim against Hillman. Specifically, the Eleventh Circuit held that

> in addition to an "objectively serious" deprivation, a deliberate-indifference plaintiff must show that the defendant acted with "subjective recklessness as used in the criminal law," [*Farmer v. Brennan*,] 511 U.S. 825, 839 (1994), and that in order to do so, the plaintiff must demonstrate that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm."[5]

*Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (citation modified). Plaintiff fails to allege facts to support that Hillman actually knew that her conduct put Foster at substantial risk of harm.

Plaintiff alleges that Hillman was responsible for performing an accurate intake assessment and screening of Foster (Doc. 6 ¶ 20), that she failed to indicate a history of mental health issues or make a referral for a mental health assessment despite Foster's significant mental health history in his medical records (Doc. 6 ¶ 30), and that she failed to notify the medical director of Foster's current condition and reported history (Doc. 6 ¶ 31). Those facts do not rise to the level of deliberate indifference as defined by the Eleventh Circuit in *Wade*. While Plaintiff alleges that Hillman had

---

[5] The appellate court clarified one caveat to its holding that, in any event, a defendant who reasonably responds to a risk "cannot be found liable" under the Eighth Amendment. *Wade*, 106 F.4th at 1255.

notice of Foster's risk of substance abuse withdrawal and mental health issues, the Amended Complaint stops short of alleging facts that Hillman was aware that Foster was a suicide risk or that her conduct otherwise put Foster at a substantial risk of serious self-infliction of harm. "[A] finding of deliberate indifference requires that officials have notice of the suicidal tendency of *the* individual whose rights are at issue in order to be held liable for the suicide of that individual." *Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994); *see also Popham*, 908 F.2d at 1564 ("Absent knowledge of a detainee's suicidal tendencies, the cases have consistently held that failure to prevent suicide has never been held to constitute deliberate indifference."). In the absence of factual allegations to indicate Hillman was aware that Foster was a suicide risk, Plaintiff fails to sufficiently allege that Hillman was deliberately indifferent to Foster's medical needs.  Accordingly, Hillman's motion to dismiss is due to be granted.

Because the Court will grant Plaintiff the opportunity to amend, the Court briefly addresses Hillman's alternative argument that she is entitled to qualified immunity because she was acting within her discretionary authority as a registered nurse. She cites *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995), for the proposition that a government official acts within her discretionary authority if the challenged actions were (1) undertaken pursuant to the performance of her duties and (2) within the scope of her authority. However, Hillman is not a government official. As an employee of the contract healthcare provider Wellpath, Defendant Hillman's qualified immunity argument is foreclosed by *Hinson v. Edmo*nd, 192 F.3d 1342, 1345

10

(11th Cir. 1999), *amended by*, 205 F.3d 1264 (11th Cir. 2000). In *Hinson*, the Eleventh Circuit rejected the assertion of qualified immunity by privately employed prison physicians, relying upon the reasoning expressed in *Richardson v. McKnight*, 521 U.S. 399 (1997), where the Supreme Court declined to extend qualified immunity to privately employed prison guards. Thus, based on *Hinson*, Defendant Hillman cannot claim the protection of qualified immunity, and Hillman's motion to dismiss based on the defense of qualified immunity is due to be denied.

### 2. *Monell* Liability — Sheriff Nocco and Wellpath

A plaintiff bringing a section 1983 claim against a municipality based on the acts of one of its employees/agents must prove two things. First, the plaintiff must sufficiently allege a constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Second, the "plaintiff suing a municipality under § 1983 must show that the municipality itself injured the plaintiff by having in place a policy or custom which violated the plaintiff's rights." *Buckner v. Toro*, 116 F.3d 450, 451 (11th Cir. 1997) (citing *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658 (1978)).

Under *Monell*, the municipal "policy" or "custom" must be the moving force behind the constitutional violation and "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as an actionable city 'policy.'" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989).

11

Plaintiff sues Chris Nocco in his official capacity as Sheriff of Pasco County, Florida.[6] Plaintiff has not alleged that Sheriff Nocco personally participated in the alleged violations. Rather, Plaintiff's allegations are based on a de facto policy or custom of permitting nurses, physicians and other health care personnel to delay or deny mental health assessments and treatment to detainees at Pasco County Jail. Doc. 6 ¶ 89.

The Pasco County Sheriff's Office has a contract with Defendant Wellpath in which Wellpath is responsible for providing health services to incarcerated individuals in Pasco County jails. Doc. 6-1. A private company, like Wellpath, may be liable under § 1983 when it "performs a function traditionally within the exclusive prerogative of the state" or county, such as providing medical services to pretrial detainees or inmates. *Craig v. Floyd County*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Buckner*, 116 F.3d at 452).

Wellpath and Sheriff Nocco move to dismiss the Section 1983 claims against them arguing Plaintiff fails to plead the violation of a constitutional right or to plead ultimate facts to demonstrate Defendants had a policy, custom or practice that was the moving force behind the alleged constitutional violation. The Court addresses the two steps in turn below.

---

[6] The capacity to be sued in federal court is governed by the law of the state in which the district court is located. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir.1992) (citing Fed. R. Civ. P. 17(b)). "Under Florida law, sheriff's offices lack the legal capacity to be sued." *Wilk v. St. Lucie Cnty. Fla. Sheriff Off.*, 740 F. App'x 658, 662 (11th Cir. 2018). Thus, for claims against a sheriff's department, the appropriate defendant to be named is the Sheriff in his official capacity. *Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1361 (S.D. Fla. 2016).

### i. Constitutional Violation

The first step is to identify the specific constitutional right allegedly infringed. Plaintiff alleges the violation of Foster's Fourteenth Amendment rights. As discussed above, the "Fourteenth Amendment requires government officials to provide basic necessities, including medical care, to pretrial detainees," such as Foster. *Ireland v. Prummell*, 53 F.4th 1274, 1287 (11th Cir. 2022) (citing *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985)); *see also Christmas v. Nabors*, 76 F.4th 1320, 1335 (11th Cir. 2023) (holding "pretrial detainees have a right to receive medical treatment for their illnesses and injuries") (citation modified). Thus, a failure to provide the appropriate medical care to a pretrial detainee violates the Fourteenth Amendment and is actionable under § 1983. *Ireland*, 53 F.4th at 1287 (citing *Valderrama v. Rousseau*, 780 F.3d 1108, 1116 (11th Cir. 2015)). However, officials cannot be held liable pursuant to Section 1983 solely on the basis of *respondeat superior* or vicarious liability. *Bryant v. Jones*, 575 F.3d 1281, 1299 (11th Cir. 2009) (citations omitted). Instead, supervisory defendants can only be liable if they participate in the violation or if their actions caused the violation. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003).

Thus, even if Plaintiff was able to effectively allege the deliberate indifference of Hillman, Plaintiff cannot allege the liability of Wellpath and Sheriff Nocco based on the acts or omissions of Hillman. Plaintiff does not independently allege that Wellpath and/or Sheriff Nocco participated in the violation or otherwise had any knowledge of Foster's suicide risk. In this circuit, a Sheriff cannot be liable under § 1983 for the suicide of a prisoner "who never had threatened or attempted suicide and

13

who had never been considered a suicide risk" *Schmelz v. Monroe County*, 954 F.2d 1540, 1545 (11th Cir. 1992) (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1277 (11th Cir. 1989). Thus, Defendants argue that Plaintiff has not adequately alleged deliberate indifference to state a cause of action for a constitutional violation.

## ii. Policy, Custom or Practice

Even if Plaintiff could adequately allege a constitutional violation, she fails to allege ultimate facts evidencing the existence of a custom, policy or practice to give rise to *Monell* liability against Sheriff Nocco or Wellpath. When alleging a claim against a municipality based on an official policy, a plaintiff must identify either (1) "an officially promulgated policy, or (2) an unofficial custom or practice shown through the repeated acts of the final policymaker of the entity." *Crenshaw v. Lister*, 509 F. Supp. 2d 1230, 1237 (M.D. Fla. 2007) (citing *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003)). "Plaintiff must identify the policy or custom which caused his injury so that liability will not be based on an isolated incident, *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (citations omitted), and the policy or custom must be the moving force of the constitutional violation." *Crenshaw,* 509 F. Supp. 2d at 1237 (citing *Grech*, 335 F.3d at 1330).

"A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479–80 (11th Cir. 1991)). "A custom is an unwritten practice that is applied consistently enough to have the same

effect as a policy with the force of law." *Goebert v. Lee County*, 510 F.3d 1312, 1332 (11th Cir. 2007) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "Demonstrating a policy or custom requires showing a persistent and wide-spread practice." *Id.* (citation modified). The unconstitutional act, moreover, must have been carried out "pursuant to" the alleged policy or custom. *See Henley v. Payne*, 945 F.3d 1320, 1331 (11th Cir. 2019) ("Mr. Henley's § 1983 claim against Sheriff Millsap fails because he has not alleged that Deputy Payne carried out the purportedly unconstitutional arrest pursuant to a policy or custom of the Bartow County Sheriff's Office.").

In Count I, Plaintiff alleges that Wellpath had a policy that required an inmate such as Foster to have a full mental health evaluation prior to housing placement. Doc. 6 ¶ 40. Although Plaintiff alleges that Hillman did not refer Foster for a mental health evaluation or assessment, given that Wellpath purportedly had such a policy is inconsistent with a claim that the policy was the moving force behind a constitutional violation.

Count II of the Amended Complaint purports to allege Section 1983 liability against Wellpath based on inadequate supervision and training. Courts recognize limited circumstances in which allegations of a failure to train can be a basis for municipal liability under § 1983. *Canton*, 489 U.S. at 387. "A failure to adequately train municipal employees constitutes an actionable policy or custom for § 1983 purposes 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact.'" *Cook*, 402 F.3d at 1092,

15

1116 (quoting *Canton*, 489 U.S. at 388). Under *Monell*, the municipal "policy" or "custom" must reflect a "deliberate" or "conscious" choice by the municipality. *Canton*, 489 U.S. at 389. "To establish . . . deliberate indifference, a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citation modified). Other than conclusory allegations, Plaintiff fails to plead any ultimate facts demonstrating that Wellpath knew of a need to better train its employees regarding performing intake assessments and referrals for mental health treatment and deliberately chose not to do so.

In Count III, Plaintiff alleges Wellpath had a de facto policy of permitting, ignoring, condoning, and/or encouraging health personnel to delay or deny the provision of adequate medical and mental health assessment, evaluation, care, treatment, referral, and intervention. Doc. 6 ¶ 65. Plaintiff's Amended Complaint includes a lengthy list of Wellpath's inappropriate, inadequate, incompetent, and/or untimely conduct, *see* Doc. 6 ¶¶ 65(a)–(l). Not only does she fail to allege any ultimate facts regarding the alleged conduct or regarding any unofficial policy, she fails to allege how the de facto policies were the moving force behind the alleged constitutional violation. Because Plaintiff fails to adequately plead ultimate facts regarding a Wellpath unofficial policy, custom or practice that was the moving force behind the alleged constitutional violation, Plaintiff fails to state a *Monell* claim against Wellpath.

Regarding Sheriff Nocco, in Count IV of the Amended Complaint, Plaintiff alleges, in conclusory fashion, that Sheriff Nocco had a de facto unconstitutional custom, policy, or practice of permitting, ignoring, condoning, and/or encouraging health personnel to delay or deny the provision of adequate medical and mental health assessment, evaluation, care, treatment, referral, and intervention. Doc. 6 ¶ 89. Like her allegations against Wellpath, Plaintiff fails to sufficiently allege ultimate facts regarding the PCSO's alleged policies, practices, and customs and how these unofficial policies were the moving force behind the alleged constitutional violation.

As to Sheriff Nocco, while Plaintiff cites to no official policy, she does attempt to allege an unofficial policy or custom by citing two previous incidents of inmate suicide. Doc. 6 ¶ 94; *see also* Doc. 25-1. But even a cursory review of the articles related to the incidents fails to support allegations of a widespread policy or practice because the one incident that occurred in August 2019 had no details regarding the circumstances of the incident. In the other incident that occurred nearly twenty years prior, there was evidence that two inmates repeatedly warned guards that the deceased had threatened to kill himself. *See Brown*, 923 F.2d at 1481 (explaining that to impose Section 1983 liability against a municipality based on an unofficial policy or custom, requires a plaintiff establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law). Because Plaintiff fails to sufficiently allege the existence of a formal or informal policy, custom, or practice that was a

17

moving force behind the alleged constitutional violation, Plaintiff cannot state a *Monell* claim against Sheriff Nocco and Sheriff Nocco's motion to dismiss is due to be granted.

## B.      Wellpath's Bankruptcy

Wellpath seeks dismissal with prejudice of all claims against it, arguing that Plaintiff's claims involve a pre-petition incident that has been discharged in its Texas bankruptcy case. Plaintiff argues she was a known creditor who never received actual notice of Wellpath's bankruptcy and thus dismissal at this juncture would be premature. In support of her argument, she attaches letters written by her counsel as early as May 2021, alerting Defendants to Plaintiff's claims arising out of Foster's death at the Pasco County Jail.[7] On the instant motion and response, the Court is unable to determine whether Plaintiff received adequate notice of the Wellpath bankruptcy and thus the motion to dismiss on this issue will be denied, without prejudice, to being raised again on a more fully developed record.

Wellpath cites to Case No. 24-9053 (sic) in the Bankruptcy Court for the Southern District of Texas. *See* Doc. 26 at 5. Although purportedly referencing a Confirmation Order in that proceeding, Wellpath does not request this Court take judicial notice of any pleading (showing notice to Plaintiff and/or discharge of her claims) from those proceedings nor does it provide any documents evidencing such notice for the Court's consideration. While the Court may take judicial notice of other

---

[7] Of note, the letters are directed to PCSO, not Wellpath. Be that as it may, the Court makes no determination at this stage whether the correspondence to PCSO put Wellpath on notice of Plaintiff's claims.

court case dockets, Wellpath has not provided the Court with adequate information to determine whether Plaintiff and/or her counsel were adequately noticed of Wellpath's bankruptcy.[8]

"Due process requires that the debtor's known creditors be given actual notice of the [claims] bar date." *In re Charter Co.*, 125 B.R. 650, 654 (M.D. Fla. 1991) (citing *City of New York v. N.Y., New Haven & Hartford R.R.*, 344 U.S. 293 (1953)). Unknown creditors, on the other hand, are entitled to only publication notice of the bar date. *In re Charter Co.*, 125 B.R. at 655 (citing *Matter of GAC Corp.*, 681 F.2d 1295, 1300 (11th Cir. 1982)). If Plaintiff received adequate notice and did not timely file a claim in the bankruptcy court, Wellpath is correct that Plaintiff's claims may be barred. However, whether Foster was a known or unknown creditor and whether she received adequate notice are questions that cannot be answered on this record and the instant motion. Accordingly, Wellpath's motion to dismiss is due to be denied without prejudice on this argument. Similarly, whether Nurse Hillman's notice of claim was valid and timely cannot be determined on the instant motions. It is

---

[8] As an initial matter, it appears that the Bankruptcy case number for *In re: Wellpath Holdings, Inc., et al.*, is Case No. 24-90533, not 24-9053 as incorrectly referenced by Defendant. While Wellpath LLC is one of 36 other debtor affiliates in the Wellpath Holdings, Inc. bankruptcy, *see, e.g.*, "Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof," Doc. 491, *In re: Wellpath Holdings, Inc., et al.*, Case No. 24-90533, (Bankr. S.D. Tex. Dec. 18, 2024), the case docket consists of over 3400 docket entries, the majority of which this Court has not reviewed. There are numerous "Debtors Master Service Lists" on the bankruptcy docket, *see, e.g.*, Docs. 97, 147, 225, 328, 541, 781, 994, 1214, 1372, 1508, in Case No. 24-90533 (Bankr. S.D. Tex.). The Court has not reviewed all of them, but of those dated February 21, 2025 and earlier, neither Foster nor her counsel Patrick Harland, Jr./the Law Firm of Patrick Harland, Jr., LLC, appear to be listed.

**ORDERED**:

1.      Defendant Sheriff Chris Nocco's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 25) is **GRANTED**.

2.      Defendants Wellpath, LLC and Dawn Marie Hillman, RN's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 26) is **GRANTED in part** and **DENIED in part,** as set forth herein.

3.      Plaintiff's First Amended Complaint (Doc. 6) is **DISMISSED without prejudice**.

4.      If she chooses, Plaintiff may file a Second Amended Complaint within 14 days of the date of this Order. Plaintiff's failure to file a Second Amended Complaint within the time permitted will result in this action being dismissed without prejudice and without further notice.

        **DONE AND ORDERED** in Tampa, Florida on February 24, 2026.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge


Copies to:
Counsel of Record
Unrepresented Parties, if any

20